This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40365**

**STATE OF NEW MEXICO,**

　　　Plaintiff-Appellee,

v.

**MELVIN MYERS,**

　　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**　　This matter was submitted to the Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases Involving the Law Offices of the Public Defender, From the Twelfth Judicial District Court in *In re Pilot Project for Criminal Appeals*, No. 2021-002, effective September 1, 2021. Having considered the brief in chief, concluding the briefing submitted to the Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant appeals from the district court's judgment and sentence, convicting him of aggravated assault with a deadly weapon and criminal damage to the property of a household member. Defendant raises two allegations of plain error regarding the testimony of Ms. Sauceda, the alleged victim, to which he asserts there were no objections. [BIC 4] First, he contends that Ms. Sauceda's statement indicating that Defendant lied about having cancer was non-responsive and inflammatory. [BIC 8-12] Second, he contends that Ms. Sauceda's statement speculating that Defendant was drinking hard liquor on the night in question was not based on personal knowledge and made it seem more likely that Defendant would be violent. [BIC 12-14]

**{3}** At the outset, we observe that Defendant was tried by a judge, not a jury. "In a bench trial, the trial court is presumed to have disregarded improper evidence, and erroneous admission of evidence is not reversible error unless it appears the trial court must have relied on it in reaching its decision." *State v. Roybal*, 1988-NMCA-040, ¶ 10, 107 N.M. 309, 756 P.2d 1204, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110 (overruling *Roybal* to the extent that the opinion separately applied an outdated harmless error test in dicta). In addition, where a defendant did not raise proper objections at trial, relief may be granted only when we are "convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *State v. Lucero*, 1993-NMSC-064, ¶ 12, 116 N.M. 450, 863 P.2d 1071. Having reviewed the testimony at the trial, we are neither convinced that the district court must have relied on the testimony in reaching its decision nor that the testimony creates grave doubts about the validity of the verdict.

**{4}** Ms. Sauceda's statement about Defendant not having cancer was given in response to the defense's line of questioning that was presented with a broad question: "Isn't it true that Mr. Myers is actually handicapped?" [CD 8/26/21 9:17:20-9:17:35] After Ms. Sauceda denied knowledge of a "handicap," the defense then asked if Ms. Sauceda was unaware of Defendant's broken shoulder. [Id. 9:17:30-:40] The defense's line of questioning suggests that it intended to imply that, as Defendant's former live-in girlfriend, Ms. Sauceda should know that Defendant had a broken shoulder. Ms. Sauceda responded that Defendant did not tell her about it and she never saw it. [Id. 9:17:30-9:17:45] She explained, "He never talked to me about his disability. All he talked to me about was that he had had cancer in his tongue, but I found out that wasn't true because I went to a doctor's appointment with him. That's all I know." [Id. 9:17:35-9:18:02] While providing more explanation than the defense would have liked, it is not clear that Ms. Sauceda's testimony was non-responsive to the line of questioning about whether it was true that Defendant "is actually handicapped." *Cf. State v. Ortega*, 2014-NMSC-017, ¶ 34, 327 P.3d 1076 ("The doctrine of fundamental error cannot be invoked to remedy the defendant's own invited mistakes." (internal quotation marks and citation omitted)).

**{5}** We also note that in response to Ms. Sauceda's testimony, Defendant testified that he had tongue cancer, that part of his tongue had been removed, and that he had a soft spot for anyone with cancer, including Ms. Sauceda. [Id. 10:08:20-:40] This

testimony not only addressed Ms. Sauceda's testimony, it contradicted her statements and challenged her credibility.

**{6}** Further, the line of questioning about Defendant's "handicap" was intended to establish that because Defendant had a broken shoulder, he could not have body-slammed Ms. Sauceda, as she had alleged. The record shows that Defendant testified about his physical disabilities, including his neck and shoulder injuries, the procedures he continues to have on his neck, his nerve damage, and the plate that was put in his shoulder. [Id. 10:12:14-10:13:31] The district court acquitted Defendant of battery against a household member, [RP 155] suggesting that Defendant's testimony about his cancer and disabilities succeeded in undermining Ms. Sauceda's testimony. Thus, it is clear that the district court could not have relied on Ms. Sauceda's statements about Defendant's lack of a "handicap" or cancer in reaching its decision to acquit Defendant of battery. *See Roybal*, 1988-NMCA-040, ¶ 10. Thus, her testimony did not constitute an injustice or cause grave doubts about the verdict. *See Lucero*, 1993-NMSC-064, ¶ 12.

**{7}** We are also not persuaded by Defendant's claim of plain error relative to Ms. Sauceda's testimony that Defendant was drinking hard liquor on the night in question. Our review of the trial shows that Ms. Sauceda was clear in her testimony that, although she observed Defendant drinking a Clamato beer and smoking marijuana, she did not personally observe Defendant drinking hard liquor. [Id. 8:59:10-9:00:00, 9:00:57-9:01:33] She explained that she did not see him drinking hard liquor and provided reasons for her belief that Defendant was drinking hard liquor: he lost his balance and seemed to act more intoxicated than he would if he drank only the Clamato beer she saw; several small bottles of hard liquor fell out of his shorts; Defendant kept going to the bathroom and coming back; and one of their biggest arguments involved him drinking and hiding it from her. [Id. 9:00:43-9:01:19, 9:17:40-9:18:40] We note that much of Ms. Sauceda's testimony about her belief that Defendant was doing shots in the bathroom was elicited by direct questions from defense counsel. [CD 9:18:10-9:18:40] *Cf. Ortega*, 2014-NMSC-017, ¶ 34 ("The doctrine of fundamental error cannot be invoked to remedy the defendant's own invited mistakes." (internal quotation marks and citation omitted)).

**{8}** In addition, the transcript shows that when Defendant's drinking first arose at trial, the district court sustained the defense's objection to the State's question to Ms. Sauceda about whether Defendant was impaired on the night in question. [Id. 9:00:05-9:01:07] The district court explained that the State needed to lay a foundation about any odors, Defendant's demeanor or physical appearance, or any liquor bottles that Ms. Sauceda may have observed before she could testify about whether Defendant was impaired. [Id. 9:00:45-9:01:05] The district court's ruling shows that it would not consider Ms. Sauceda's speculation about Defendant's intoxication without grounding her testimony in observations based on her personal knowledge. Thus, it is clear to us that we may safely presume that the district court disregarded any improper testimony Ms. Sauceda offered relative to Defendant's intoxication. *See Roybal*, 1988-NMCA-040, ¶ 10.

**{9}** Lastly, we observe that the district court acquitted Defendant of both battery against a household member and negligent use of a firearm by intoxication. [RP 155-56] Defendant does not adequately demonstrate how the guilty verdicts were affected by Ms. Sauceda's testimony about Defendant's intoxication by hard liquor, in light of all the other evidence, or why her testimony would cause grave doubts about the result. Considering all the evidence presented, we conclude that Ms. Sauceda's testimony does not indicate that an injustice occurred and does not provide grounds for grave doubts about the verdict. *See Lucero*, 1993-NMSC-064, ¶ 12.

**{10}** Based on the foregoing, we hold that Defendant has not established plain error or reversible error. Accordingly, we affirm the district court's judgment and sentence.

**{11} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**JANE B. YOHALEM, Judge**